# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

March 10, 2011

Marshall R. King
Direct: 212.351.3905
Fax: 212.351.5243
MKing@gibsondunn.com

VIA ECF FILING

Client: T 93292-00083

The Honorable Burton R. Lifland
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, New York  10004

Re: *Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities*
*LLC*; *In re Bernard L. Madoff*, Adv. Pro. No. 08-01789 (BRL)

*Picard v. UBS AG, et al.*, Adv. Pro. No. 10-04285 (BRL)

*Picard v. UBS AG, et al.*, Adv. Pro. No. 10-05311 (BRL)

Dear Judge Lifland:

We represent UBS AG in connection with the above-captioned adversary proceedings.
Pursuant to this Court's March 4, 2011 Order Directing Parties to Show Cause by Letter
Submission for Maintaining Redactions, UBS AG hereby respectfully submits that there are
legitimate and compelling grounds for redacting one limited category of information—
specifically, information that reveals the identities of six individuals currently or formerly
employed by UBS AG and/or its corporate affiliates (the "Individual Identifying
Information")—from the publicly filed complaints in the proceedings against UBS AG.  The
names of these individuals are of virtually no importance to the judicial process or the
public's understanding of this matter at this stage of the proceedings, and disclosure of the
names would expose these individuals to harassment, threats, stigmatization, or worse.

Accordingly, the Court should direct the limited redaction of the publicly filed complaints in
these two matters to protect Individual Identifying Information.

## Background

UBS AG and certain of its corporate affiliates (collectively, "UBS") have been sued by
Irving H. Picard (the "Trustee"), as Trustee for the Liquidation of Bernard L. Madoff
Securities LLC ("BLMIS"), in two actions seeking damages and recovery of alleged
"customer property" on behalf of the BLMIS estate and its former customers.  On November
23, 2010, the Trustee filed a complaint against UBS and others asserting claims arising out of
the formation and operation of two foreign investment funds, Luxalpha SICAV and
Groupement Financier Ltd. (the "Luxalpha Complaint").  On December 7, 2010, the Trustee

# GIBSON DUNN

filed a second complaint seeking to recover from UBS on claims arising out of the formation and operation of another foreign investment fund, Luxembourg Investment Fund U.S. Equity Plus (the "LIF Complaint" and, together with the Luxalpha Complaint, the "Complaints"). The Complaints have not yet been served on most of the defendants.

In each Complaint, the Trustee has relied on and quoted from certain documents that UBS designated as CONFIDENTIAL MATERIAL pursuant to the terms of the Protective Order entered by this Court on February 16, 2010 (Docket No. 1951). As required by the Protective Order, the Trustee filed redacted public versions of the Complaints, which reflect the redaction of UBS' designated CONFIDENTIAL MATERIAL, as well as the redaction of CONFIDENTIAL MATERIAL produced to the Trustee by others.

UBS and the Trustee have since engaged in good-faith negotiations, and UBS has agreed that the entirety of the Complaints, save for certain Individual Identifying Information, may now be unredacted. As a result, the substance and contents of various UBS documents and emails will become publicly available.

UBS maintains, however, that certain Individual Identifying Information should remain redacted, for the safety and protection of the six individuals involved.[1] The Trustee does not oppose UBS' position in this regard, but he maintains that the Court, rather than the litigants, should determine whether the Individual Identifying Information should remain under seal going forward and, therefore, should be redacted from the Complaints. Certain members of the media, moreover, are seeking the complete unsealing of the Complaints.

**Under Controlling Second Circuit Law, this Court Should Continue
to Preserve the Confidentiality of Individual Identifying Information**

This Court has broad discretion to permit the redaction of Individual Identifying Information from publicly filed documents. "[T]he right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Nixon v. Warner Comm., Inc.*, 435 U.S. 589, 598 (1978); *see U.S. v. Amodeo*, 44 F.3d 141, 146 (2d Cir. 1995) ("*Amodeo I*") ("Although there is a presumption favoring access to judicial records, the fact that a document is a judicial record does not mean that access to it cannot be restricted."). UBS seeks continued sealing of the names of its current and former employees

---

[1] The Individual Identifying Information at issue is contained in the following paragraphs of the Complaints: Luxalpha Compl. ¶¶ 104-06, 110-13, 115, 143; LIF Compl. ¶¶ 81-83, 87-90.

# GIBSON DUNN

because those individuals may suffer unwarranted adverse consequences as a result of being identified in the Complaints. The Madoff liquidation proceedings (including the actions against UBS) have generated a staggering amount of media interest, both in the U.S. and abroad, where some of the relevant UBS employees live. These individuals stand to have their names disseminated—and almost certainly tarnished, if not far worse—in media coverage around the world.

Court records that threaten to "gratify spite or promote scandal" are the types of documents as to which public access has previously been restricted. *Amodeo I*, 44 F.3d at 146. Public dissemination of the Individual Identifying Information could very well cause "spite" or "scandal" for the UBS employees implicated here, in the form of physical harm, property damage, libel, or general societal stigma. Moreover, the probative value of the Individual Identifying Information—which is of little or no concern to the actual matters at issue in these proceedings—is vastly outweighed by the privacy interests at stake here. As such, this Court should not mandate the public disclosure of Individual Identifying Information or require the public filing of unredacted copies of court documents containing such information.

Thus, although the courts of this Circuit recognize a presumptive right of public access to court documents such as the Complaints, that right is far from absolute. The presumption of access to any particular document must be measured by reference to "'the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts,'" and, moreover, must be balanced against "countervailing factors" favoring confidential treatment, including "'the privacy interests of those resisting disclosure.'" *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006) (quoting *U.S. v. Amodeo*, 71 F.3d 1044, 1049-50 (2d Cir. 1995) ("*Amodeo II*")); *accord, e.g., Caxton Int'l Ltd. v. Reserve Int'l Liquidity Fund, Ltd.*, 2009 WL 2365246, at *2 (S.D.N.Y. July 30, 2009). The factors underlying this analysis weigh decidedly in favor of preserving the confidentiality of Individual Identifying Information here, even where that information is referenced in the Complaints.

## 1. The Names of UBS' Employees are Irrelevant to the Court Proceedings, and Disclosing Them Would Further No Significant Public Interest

As noted above, the importance of the material to be sealed turns on the nature of the role that information plays in the adjudicative process. Here, the identities of the authors of certain documents are of no material consequence to any issue relevant to these proceedings, and public disclosure of that information would therefore have no effect whatsoever on any observer's efforts to monitor this Court's adjudicative process. This is particularly so where, as here, the contents of the Complaints and the substance of the relevant documents *will be*

# GIBSON DUNN

made available to the public, save for the redaction of the Individual Identifying Information.[2] In cases where the redacted information plays such a minimal role in the adjudicative process and the public's monitoring of the courts, courts have found that the presumption of access is attenuated. *See In re Savitt/Adler Litig.*, 1998 WL 51994, at *3 (N.D.N.Y. Feb. 5, 1998) (allowing redactions for names and identifying details, and noting that allowing such redactions "represent[ed] only a minimal intrusion on the public's right to know both the basis of the plaintiffs' contentions and the basis for whatever decision [the court] ultimately reach[ed]"); *see also In re San Francisco Chronicle*, 2007 WL 2782753, at *4 (E.D.N.Y. Sept. 24, 2007) (district court upheld redaction of names of third-parties contained in an affidavit, citing privacy concerns of those individuals and the fact that the names had "very little, if any, role in public monitoring of the courts"). Disclosure of the identities of UBS' employees would do nothing to advance "the public's right to know" the "basis" for any of the parties' contentions or the Court's resolution of the matters in dispute.

In any event, there is minimal, if any, legitimate public interest in the names of the UBS employees. The UBS employees are not central figures in Madoff's fraudulent activities, and their involvement, for the most part, is simply that they happened to have authored certain internal documents or e-mails. Public curiosity as to the role of innocent bystanders referenced in litigation is *not* reason enough to favor a presumption of access. *Amodeo II*, 71 F.3d at 1051 ("Courts have long declined to allow public access simply to cater to a morbid craving for that which is sensational and impure.") (internal quotation omitted). There is no probative value in these employee names—the facts and allegations in the Complaints are fully transparent and substantively intact without actually naming the UBS employees. *See Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 161 F.R.D. 355, 358 (N.D. Ill. 1995) ("Rule 26 requires a [c]ourt to balance the privacy interest in the information asserted by one party with the probative value of that information to the other party."). The public has little interest in access to employee names that have no probative value or bearing on the outcome of this Action. Revelation of these names will not lead to any change in public perception of this Action nor new allegations or claims.

    **2.    Countervailing Factors—Namely, the Privacy Interests of the UBS Employees—Weigh Strongly Against Disclosure**

As the Second Circuit has acknowledged, potential harm to the privacy interests of the UBS employees constitutes a significant countervailing factor supporting the continued redaction

---

[2] Indeed, in certain instances, the Trustee himself quoted UBS documents *without* identifying the specific author, demonstrating that the Individual Identifying Information is immaterial. *See, e.g.*, Luxalpha Compl. ¶¶ 107, 113.

# GIBSON DUNN

of Individual Identifying Information. In *Amodeo II*, for example, the court noted that damage to an individual's right to privacy is always a strong countervailing interest counseling against public disclosure. *Amodeo II*, 71 F.3d at 1050 ("[T]he privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation." (quoting *Gardner v. Newsday, Inc. (In re Newsday, Inc.)*, 895 F. 2d 74, 79-80 (2d Cir. 1990))).

The potential invasion of their privacy here threatens significant harm to the individual UBS employees. As this Court is well aware, the Madoff proceedings concern the financial impacts of the largest Ponzi scheme in history. They have become the subject of intense and highly sensationalized media scrutiny. Thousands of investors have complained of the loss of substantial investments, including, in many cases, their life savings. Many of them have publicly expressed their outrage with those purportedly responsible for the Madoff fraud. The revelation of the Madoff fraud has already been connected to the suicide of two individuals reportedly involved in dealings with Bernard Madoff: Mark Madoff and Thierry de la Villehuchet. In many ways, the Madoff fraud has thrown a blanket of stigma upon anyone associated with the scandal. If the identities of UBS' employees are publicly disseminated, those employees are likely to be subjected, inappropriately, to that same stigma and to become the targets of the same public outrage concerning the Madoff fraud itself.

Furthermore, once the identities of the UBS employees are revealed, any party inclined to do so could readily obtain further personal information concerning those individuals, including (in at least some cases) phone numbers, email addresses, employment information, and residential addresses. It is likely that these individuals will be targeted by media operatives and others and subjected to harassing communication campaigns. Their property and personal safety may be threatened or harmed. And the stigma and appearance of impropriety deriving from association with the Madoff fraud could harm the individuals in connection with future employment or business prospects.

In short, these individuals have a right to privacy that Second Circuit courts have previously recognized as sufficient to justify restricting public access to court documents containing Individual Identifying Information. *See Gardner*, 895 F. 2d at 79-80 (upholding district court's decision to "redact[] references to innocent third parties" before making search-warrant applications available to media entity); *In re L.K.*, 2009 WL 1955455, at *2 (Bankr. E.D.N.Y. July 6, 2009) (ordering all references to a debtor's name changed to avoid "stigma" to the debtor).

\*   \*   \*

The relevant factors here weigh in favor of this Court allowing the continued redaction of Individual Identifying Information. At least at present, the names play no Article III role and

# GIBSON DUNN

have no bearing on this Court's powers of adjudication. Release of the names has the potential to cause several types of harm to innocent parties. And, where the names have no probative value, the public has no interest in them beyond sheer curiosity. The court in *Amodeo II* held that "[u]nlimited access to every item turned up in the course of litigation would be unthinkable. Reputations would be impaired, personal relationships ruined, and businesses destroyed on the basis of misleading or downright false information." 71 F.3d at 1048-49. Release of the UBS employee names would likely cause similar, if not identical, results.

For the foregoing reasons, UBS respectfully submits that this Court should not order the unsealing of Individual Identifying Information, and should direct the Trustee to redact this limited class of information from the publicly filed Complaints.

Respectfully,

Marshall R. King

cc: All counsel of record (via ECF filing)
    Daniel M. Kummer, Esq. (via email)
    George Freeman, Esq. (via email)
    David J. Sheehan, Esq. (via email)
    Josephine Wang, Esq. (via email)
    Kevin H. Bell, Esq. (via email)
    Christopher H. Larosa, Esq. (via email)