NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>　　　　　Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　　　Defendant. | No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>　　　　　Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>UBS EUROPE SE (f/k/a UBS (LUXEMBOURG) S.A.), UBS FUND SERVICES (LUXEMBOURG) S.A., UBS THIRD PARTY MANAGEMENT COMPANY S.A., M&B CAPITAL ADVISERS SOCIEDAD DE VALORES, S.A., RELIANCE INTERNATIONAL RESEARCH LLC, LUXEMBOURG INVESTMENT FUND AND LUXEMBOURG INVESTMENT FUND U.S. EQUITY PLUS, as represented by their Liquidators MAÎTRE ALAIN RUKAVINA and PAUL LAPLUME, MAÎTRE ALAIN RUKAVINA and PAUL LAPLUME, in their capacities as liquidators and representatives of LUXEMBOURG INVESTMENT FUND AND LUXEMBOURG INVESTMENT FUND U.S. EQUITY PLUS,<br><br>　　　　　Defendants. | Adv. Pro. No. 10-05311 (CGM) |

**MEMORANDUM DECISION DENYING DEFENDANT'S MOTION TO DISMISS**

A P P E A R A N C E S :

Jenner & Block LLP
1155 Avenue of the Americas
New York, New York 10136
*Counsel for Defendant M&B Capital Advisers Sociedad De Valores, S.A.*
By:    Richard Levin
       Carl Wedoff

BAKER HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*
By:    Oren J. Warshavsky
       David J. Sheehan
       Gonzalo Zeballos
       Tatiana Markel

OF COUNSEL: BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
By:    Benjamin Pergament
       Robertson Beckerlegge
       Geoffrey A. North
       Michelle R. Usitalo

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the motion of the Defendant, M&B Capital Advisers Sociedad De Valores, S.A. ("M&B" or "Defendant"), to dismiss the complaint of Irving Picard, the trustee ("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") seeking to recover subsequent transfers allegedly consisting of BLMIS customer property. (Mot. Dismiss, ECF No. 292). Defendant seeks dismissal for lack of personal jurisdiction and for failing to state a claim for recovery of subsequent transfers. For the reasons set forth herein, the motion to dismiss is denied in its entirety.

### Jurisdiction

This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O). This Court has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§ 1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and the Amended Standing Order of Reference, dated January 31, 2012. In addition, the District Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order, Civ. 08–01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this Court has jurisdiction under the latter provision. Personal jurisdiction has been contested by Defendant and will be addressed *infra*.

### Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme operated by Bernard L. Madoff ("Madoff") and its SIPA proceeding. *See Picard v. Citibank, N.A. (In re BLMIS),* 12 F.4th 171, 178–83 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard,* 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on December 7, 2010. (Compl., ECF[1] No. 1). The Trustee filed a second amended complaint on February 24, 2023 (the "Complaint"). (Am. Compl., ECF No. 284). Via the Complaint, the Trustee is seeking to recover transfers of customer property allegedly made by BLMIS to Defendant, UBS Europe SE (f/k/a UBS (Luxembourg) S.A.) ("UBS SA"), UBS Fund Services (Luxembourg) S.A. ("UBSFSL"), UBS Third Party Management Company S.A. ("UBSTPM," and together with UBS SA and UBSFSL, the "UBS Defendants"), and Reliance International Research LLC ("RIR"). (*Id.* ¶¶ 270–76).

The Complaint alleges that Defendant was essential to the formation of Luxembourg Investment Fund U.S. Equity Plus ("LIF-USEP"). (*Id.* ¶ 86). ("M&B (including through its agents' acts) was crucial to LIF-USEP's establishment and operations and the growth of its BLMIS investments."). LIF-USEP was a feeder fund of BLMIS which invested wholly with BLMIS in New York. (*Id.* ¶¶ 1–2, 65, 99, 126). The Complaint alleges that LIF-USEP was created to invest in BLMIS with full knowledge of BLMIS' fraud. (*Id.* ¶ 65) ("[LIF-USEP's] *raison d'être* was to invest with and profit from BLMIS's operations, which LIF-USEP and its agents knew took place in New York.").

M&B is a Spanish securities broker-dealer organized under Spanish law with an office in Madrid, Spain. (*Id.* ¶ 84). M&B was one of several entities formed by Guillermo Morenes Mariategui ("Morenes") and Francisco Javier Botín Sanz de Sautuola O'Shea ("Botín"). (*Id.* ¶ 85). Another entity, M&B Capital Advisers Gestión SGIIC ("M&B SGIIC"), which was involved with M&B's BLMIS investments, merged into M&B in January 2010, and received transfers of customer property. (*Id.*). The Complaint alleges that Defendant and related M&B

---

[1] Citations to this Court's electronic docket refer to the docket of adversary case number 10-05311 unless otherwise noted.

Page **4** of **19**

entities "collectively functioned as a family office for wealthy European investors, providing a variety of investment advisory and related services." (*Id.* ¶ 86).

The feeder fund's alleged knowledge of BLMIS's fraud centers on the relationship between Manuel Echeverría and Madoff. (*Id.* 257–63). Echeverría was the agent of LIF-USEP and of M&B with respect to LIF-USEP's investments with BLMIS. Prior to the creation of LIF-USEP, Echeverría had "been in charge of the Madoff relationship for Optimal U.S. Equity Fund . . . a $3.2 billion BLMIS feeder fund." (Id. ¶ 2). In this role, Echeverría "cultivated a relationship with Madoff and a network of Madoff-approved investment professionals." (*Id.*). Bernard Madoff "viewed Echeverría as one of his top European envoys and a source of new investment capital." (*Id.* ¶ 91).

The Complaint alleges that Echeverría had brought a group of well-connected investment professionals together around Morenes and Botín, to establish LIF-USEP in 2005 as a feeder fund of BLMIS. (Am. Compl. ¶¶ 2, 87). Echeverría had done so to "unlock an opportunity for direct BLMIS investment" that would get past the limits imposed by investing with other feeder funds. (*Id.* ¶¶ 88–89). Echeverría developed the architecture for LIF-USEP. (*Id.* ¶ 92). M&B was to serve as "the fund's distributor, signing a Consultancy and Exclusive Introducing Agreement with UBS SA." (*Id.*).

The Complaint alleges that Echeverría regularly communicated with Madoff in person, by telephone, and by fax regarding LIF-USEP's establishment and operation. (*Id.* ¶ 261) ("At least fifty times during LIF-USEP's existence, Echeverría communicated with Madoff, Reliance, or UBS on LIF-USEP's and M&B's behalf, in furtherance of the effort to expand BLMIS investment."). Echeverría "arranged for a meeting with Madoff and facilitated the opening of a BLMIS account for LIF-USEP." (*Id.* ¶ 93). He assembled service providers that would be

acceptable to regulators and to Madoff. (*Id.* ¶ 94). Knowing that Reliance, a firm headed by his friend, Tim Brockman, sought access to a BLMIS feeder fund, Echeverría approached Brockman about LIF-USEP. (*Id.* ¶ 95). Brockman then committed Reliance Gibraltar to serve as LIF-USEP's official investment advisor. (*Id.*).

Knowing that UBS had acted as a service provider for other BLMIS feeder funds, Echeverría traveled with the director of M&B "to Luxembourg to meet with UBS SA about LIF-USEP. As it had with Luxalpha, UBS signed on to serve as LIF's official sponsor, administrator, and custodian." (*Id.* ¶ 96–97). UBS "agreed to stock LIF-USEP's board of directors with UBS employees." (*Id.* ¶ 98). LIF-USEP's board of directors was stocked with UBS SA employees. (Id. ¶¶ 98, 260). "All five of LIF-USEP's directors were employees of UBS SA." (*Id.* ¶ 98). This architecture was in place when LIF-USEP was formed in August 2005. (*Id.* ¶ 99).

Echeverría worked as M&B's and LIF-USEP's agent after the latter's formation and carried out "a number of behind-the-scenes roles critical to the fund's success." (*Id.* ¶ 100). He managed the "flow of subscription and redemption requests" while also making sure to not trigger the "irritation of Madoff . . . with inopportune redemption requests." (*Id.*).

**Trustee's Complaint**

In his Complaint, the Trustee asserts four counts. (Am. Compl. ¶¶ 284–308). Counts one and four are directed at LIF-USEP and against Luxembourg Investment Fund SICAV ("LIF") the alleged umbrella fund of LIF-USEP. (*Id.* ¶¶ 65, 284, 302). Count two is directly solely against LIF-USEP. (Id. ¶ 291). Via count three of the Complaint, the Trustee seeks to recover transfers of BLMIS customer property that BLMIS made to LIF-USEP (the "Initial Transfers") and were subsequently transferred to the Defendant, the UBS Defendants, and RIR (the "Subsequent Transferees"). (*Id.* ¶ 297–300).

**Initial Transfers**

According to the Complaint, "LIF-USEP maintained BLMIS account no. 1FR123." (*Id.* ¶ 264). LIF-USEP sent funds to BLMIS or to BLMIS's JPMorgan Chase in New York, Account No. xxxxxxxxxxx1703 "for application to the [1FR123] Account and the purported conducting of trading activities." (*Id.* ¶ 265). Within two years of the filing date, BLMIS allegedly made transfers to or for the benefit of LIF-USEP of at least $498.3 million. (*Id.* ¶ 266). The Trustee is seeking to avoid and recover the initial transfers paid from BLMIS to LIF-USEP pursuant to 11 U.S.C. §§ 548, 550(a)(1) and to 15 U.S.C. § 78fff-2(c)(3). (*Id.* ¶ 266).

**Subsequent Transfers**

Count three is asserted against M&B, the UBS Defendants, and RIR. (Am. Compl. ¶ 297). The Complaint alleges that LIF-USEP transferred some portion of the Initial Transfers to each of the defendants "as payment for their alleged service of LIF-USEP," thereby constituting subsequent transfers. (*Id.* ¶ 270). The Complaint alleges that the UBS Defendants received at least $18,537,826 and that RIR received at least $4,324,482 in subsequent transfers from the feeder fund. (*Id.* ¶¶ 271, 273).

The Complaint alleges that Defendant "received at least $9,803,268 in subsequent transfers from LIF-USEP." (*Id.* ¶ 272). From September 2005 to December 2008, Defendant received $6,024082 in "trailing and distribution fees from UBS SA and UBSTPM," which those defendants received from LIF-USEP. (*Id.*). Between 2006 and 2007, LIF USEP transferred at least $2,878,597 to M&B in connection with M&B's proprietary investments and at least $900,590 to M&B SGIIC in connection with M&B SGIIC's proprietary investments. (*Id.*).

On May 5, 2023, Defendant filed a motion to dismiss the Complaint against it. (Mot. Dismiss, ECF No. 292). In the motion to dismiss, Defendant argues that the Trustee has failed to

plausibly allege that Defendant received transfers of customer property of BLMIS and that it is not subject to personal jurisdiction in this Court. (*See* Mem. L. 1–2, ECF No. 292). The Trustee has filed opposition. (Opp'n, ECF No. 303). The parties waived oral argument on this motion. (Stip. and Order, ECF No. 312).

## Discussion

**Personal Jurisdiction**

Defendant, a foreign entity, seeks dismissal for lack of personal jurisdiction. The Trustee argues that there is specific jurisdiction over the Defendant. (Opp'n 7, ECF No. 303). The Complaint alleges that Defendant maintained minimum contacts with New York in connection with the claims in this adversary proceeding. (Am. Compl. ¶ 17, ECF No. 284).

To survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Trustee "must make a prima facie showing that jurisdiction exists." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010)). A trial court has considerable procedural leeway when addressing a pretrial dismissal motion under Rule 12(b)(2). *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013). "'It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.'" *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *see also Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018) (same).

"Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Dorchester Fin.*,

722 F.3d at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)); *Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*), 627 B.R. 546, 565 (Bankr. S.D.N.Y. 2021) (same). At the pre-discovery stage, the allegations need not be factually supported. *See Dorchester Fin.*, 722 F.3d at 85 (explaining that an averment of facts is necessary only after discovery).

In order to be subjected to personal jurisdiction in the United States, due process requires that a defendant have sufficient minimum contacts with the forum in which defendant is sued "'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 516 (Bankr. S.D.N.Y. 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The pleadings and affidavits are to be construed "'in the light most favorable to the plaintiffs, resolving all doubts in their favor.'" *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)); *BNP Paribas S.A.*, 594 B.R. at 187.

> The Supreme Court has set out three conditions for the exercise of specific jurisdiction over a nonresident defendant. First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State. Second, the plaintiff's claim must arise out of or relate to the defendant's forum conduct. Finally, the exercise of jurisdiction must be reasonable under the circumstances.

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up).

**Purposeful Availment**

"[M]inimum contacts . . . exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018). "Although a defendant's

contacts with the forum state may be intertwined with its transactions or interactions with the plaintiff or other parties, a defendant's relationship with a third party, standing alone, is an insufficient basis for jurisdiction." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up). "It is insufficient to rely on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of a plaintiff with the forum to establish specific jurisdiction." *Id.*

Defendant argues that the Trustee has not alleged that it has sufficient contacts with New York. (Mem. L. 6–7, ECF No. 292). The Complaint suggests otherwise.

Defendant is a securities broker-dealer organized in Spain. (*Id.* ¶ 84). M&B allegedly created and ran the feeder fund, LIF-USEP, which invested $758 million with BLMIS. (Am. Compl. ¶¶ 169, 258–59.). It allegedly received BLMIS account statements and trade confirmations. (*Id.* ¶ 259). As distributor of LIF-USEP, M&B recruited investment capital for the fund. (*Id.* ¶¶ 4, 92, 179). It received millions in fees in the form of BLMIS money through LIF-USEP as a result from its relationship to LIF-USEP. (*Id.* ¶¶ 92, 171, 270). M&B also served as the feeder fund's official sponsor, custodian, administrator, manager, and advisor. (*Id.* ¶ 259).

Defendant states that it performed various services for the feeder fund including distributing investments to clients and discussing fees and liquidity with service providers of the feeder fund. (Hergueta Decl. ¶ 12, ECF No. 293). The Trustee alleges that Defendant edited parts of LIF-USEP's prospectus and procedures, including parts regarding the fund's investment policy and fees, and sent those edits to individuals in New York, including Justin Lowe of RIR. (*See id.*). By funneling clients to the feeder fund, M&B "deepen[ed] BLMIS's insolvency, and . . . created a false appearance of regulatory compliance." (Am. Compl. ¶ 180). After creating

new feeder funds—Landmark Investment Fund and Defender Limited Fund—Defendant transmitted their opening agreements to BLMIS in New York and delegated management authority for Landmark to BLMIS. (*Id.* ¶179); (Ruiz Decl. ¶ 16, ECF No. 104); (North Decl. Ex. 6.).

These allegations are legally sufficient to constitute a prima facie showing of jurisdiction. *Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d. Cir. 2013). "[A]lthough physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). The UBS PJ Defendant "intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money orchard in the United States and reap the benefits therefrom." *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 506 (Bankr. S.D.N.Y. 2012). Defendant's alleged contacts with New York are not random, isolated, or fortuitous.

**Arise out of or relate to the defendant's forum conduct**

As to the second prong, the suit must "arise out of *or relate to* the defendant's contacts with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, __ U.S. __, 141 S. Ct. 1017, 1026, 209 L. Ed. 2d 225 (2021) (emphasis in original). "[P]roof that a plaintiff's claim came about because of the defendant's in-state conduct" is not required. *Id.* at 1027. Instead, the court need only find "an affiliation between the forum and the underlying controversy." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Where the defendant's contacts with the jurisdiction that relate to the cause of action are more substantial, however, it is not unreasonable to say that the defendant is subject to personal jurisdiction even though the acts

Page **11** of **19**

within the state are not the proximate cause of the plaintiff's injury.") (internal quotations omitted).

The Trustee is asserting subsequent transfer claims against M&B for monies it received from the BLMIS feeder fund. (Am. Compl. ¶¶ 270–76). These allegations are directly related to their investment activities with BLMIS through LIF-USEP. *BNP Paribas S.A.*, 594 B.R. at 191 (finding that the redemption and other payments the defendants received as direct investors in a BLMIS feeder fund were the proximate cause of the injuries that the Trustee sought to redress and arose from the New York contacts such as sending subscription agreements to New York, wiring funds in U.S. dollars to New York, sending redemption requests to New York, and receiving redemption payments from a Bank of New York account in New York).

The suit is affiliated with the alleged in-state conduct. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

**Reasonableness**

Having found sufficient minimum contacts, the Court must determine if exercising personal jurisdiction over Defendant is reasonable and "comport[s] with fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (internal quotations omitted). Factors the Court may consider include the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies. *Id.* at 477.

The exercise of jurisdiction is reasonable. Defendant is not burdened by this litigation. Defendant actively participated in this Court's litigation for over eleven years. (*See* Mot. to

Withdraw Reference, ECF No. 84). M&B is represented by U.S. counsel and has continually associated with other New York-based defendants. The forum and the Trustee both have a strong interest in litigating BLMIS adversary proceedings in this Court. *Picard v. Maxam Absolute Return Fund, L.P. (In re BLMIS)*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012); *Picard v. Chais (In re BLMIS)*, 440 B.R. 274, 278 (Bankr. S.D.N.Y. 2010); *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 418 B.R. 75, 82 (Bankr. S.D.N.Y. 2009); *Picard v. Fairfield Greenwich Grp.,* (*In re Fairfield Sentry Ltd.*), 627 B.R. 546, 568 (Bankr. S.D.N.Y. 2021); *see also In re Picard*, 917 F.3d 85, 103 (2d Cir. 2019) ("The United States has a compelling interest in allowing domestic estates to recover fraudulently transferred property.").

By alleging Defendant intentionally targeted its activities at BLMIS, the Trustee has met his burden of alleging jurisdiction as to each subsequent transfer that originated with BLMIS. As recognized by the Second Circuit, "[w]hen these [subsequent transfer] investors chose to buy into feeder funds that placed all or substantially all of their assets with Madoff Securities, they knew where their money was going." *In re Picard*, 917 F.3d 85, 105 (2d Cir. 2019). Defendant was instrumental in the creation of a BLMIS feeder fund, misled regulators, and brought new capital in to perpetuate the fraud. (Am. Compl. ¶¶ 70–74, 155–63). The Trustee has made a prima facie showing of personal jurisdiction.

**12(b)(6) standard**

"To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The claim is facially plausible when a plaintiff pleads facts that allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."). In deciding a motion to dismiss, the Court should assume the factual allegations are true and determine whether, when read together, they plausibly give rise to an entitlement of relief. *Iqbal*, 556 U.S. at 679. "And, of course, a well-pl[ed] complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A complaint is "deemed to include any written instrument attached to it as an exhibit[,] . . . documents incorporated in it by reference[,]" and other documents "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted). A document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous information and relied on it in framing the complaint. *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

While the Trustee must allege that the initial transfers from BLMIS to the feeder fund are avoidable, he is not required to avoid the transfers received by the initial transferees before asserting an action against subsequent transferees. *IBT Int'l Inc. v. Northern (In re Int'l Admin Servs., Inc.)*, 408 F.3d 689, 706-07 (11th Cir. 2005). The Trustee is free to pursue any of the

immediate or mediate transferees, and nothing in the statute requires a different result. *IBT Int'l, Inc. v. Northern* (*In re Int'l Admin. Servs., Inc.*), 408 F.3d 689, 706–07 (11th Cir. 2005).

The Trustee seeks recovery of initial transfers made within two years of the filing date. (Am. Compl. ¶ 266) ("During the two years preceding the Filing Date, BLMIS made transfers to or for the benefit of LIF-USEP in the amount of at least $498,300,000 . . . .").

**Whether BLMIS's Initial Transfers Are Avoidable as Intentionally Fraudulent Conveyances?**

In relevant part, § 548(a)(1)(A) allows the Trustee to avoid any transfer made within two years before the filing date of this SIPA action, if BLMIS made the transfer with "actual intent to hinder, delay, or defraud." 11 U.S.C. § 548(a)(1)(A).

Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

> Where the actual fraudulent transfer claim is asserted by a bankruptcy trustee, applicable Second Circuit precedent instructs courts to adopt a more liberal view since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge. Moreover, in a case such as this one, where the Trustee's lack of personal knowledge is compounded with complicated issues and transactions that extend over lengthy periods of time, the trustee's handicap increases, and even greater latitude should be afforded.

*Picard v. Cohmad Secs. Corp.,* (*In re BLMIS*), 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (cleaned up).

Because the Trustee has pleaded that BLMIS operated a Ponzi scheme, the Trustee's burden of pleading actual fraudulent intent is satisfied. (Am. Compl. ¶¶ 38, 61–62); (*id.* ¶ 24) ( Madoff pleaded guilty and admitted he operated a Ponzi scheme through BLMIS). The "Ponzi scheme presumption" allows courts to presume actual intent to defraud on part of the operator of the Ponzi scheme. *Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008) ("The mere existence of

a Ponzi scheme is sufficient to establish actual intent to defraud."). In this case, the Ponzi scheme presumption allows the Court to presume that BLMIS made the initial transfers with actual intent to defraud because Madoff has admitted to operating a Ponzi scheme.

The mere existence of a Ponzi scheme "demonstrates actual intent as matter of law because transfers made in the course of a Ponzi scheme could have been made for no purpose other than to hinder, delay or defraud creditors." *Bear Stearns Secs. Corp. v. Gredd* (*In re Manhattan Inv. Fund Ltd.*), 397 B.R. 1, 8 (S.D.N.Y. 2007). The "Ponzi scheme presumption" makes perfect sense in cases such as this one. BLMIS had no legitimate assets and therefore every transfer made by BLMIS was made with actual intent to defraud in order to ensure that Ponzi scheme would survive.

The Trustee has pleaded that BLMIS operated a Ponzi scheme and as such, BLMIS' actual fraudulent intent is presumed via the Ponzi scheme presumption. (Am. Compl. ¶¶ 1, 24–28, 38, 287–89). Intent to defraud is established as debtor operated a Ponzi scheme. *Picard v. Cohen*, Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296, at *5 (Bankr. S.D.N.Y. Apr. 25, 2016) (citing *Omnibus Good Faith Decision*, 531 B.R. at 471) ("the Trustee is entitled to rely on the Ponzi scheme presumption pursuant to which all transfers are deemed to have been made with actual fraudulent intent"); *Picard v. Cohmad Sec. Corp.*, 454 B.R. 317, 330 (Bankr. S.D.N.Y. 2011) ("the fraudulent intent on the part of the debtor/transferor . . . is established as a matter of law by virtue of the 'Ponzi scheme presumption'"). That BLMIS operated as a Ponzi scheme is well-established and the Court relies on earlier findings of same and holds that the Trustee has met its burden of pleading BLMIS' actual intent on this issue. *See Picard v. Legacy Capital Ltd.*, 603 B.R. 682, 688-93 (Bankr. S.D.N.Y. 2019) (discussing in detail that BLMIS was a Ponzi scheme and why the Trustee is permitted to rely on the Ponzi scheme presumption

to prove intent as a matter of law); *see also Bear Stearns Secs. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 11 (S.D.N.Y. 2007) ("[T]he Ponzi scheme presumption remains the law of this Circuit.").

**BLMIS Customer Property**

Defendant argues that the Complaint fails to plausibly allege that it received subsequent transfers from LIF-USEP consisting of avoidable BLMIS customer property. (Mem. L. 2, ECF No. 292). Specifically, Defendant argues that the "allegations in the Complaint are thus not only implausible but in fact impossible." (*Id.* at 15).

Rule 8(a) governs the Trustee's pleading burden and a short and plain statement that the pleader is entitled to relief is all that is required. Fed. R. Civ. P. 8(a). This standard of pleading is meant to ensure that the defendant has proper notice of the claim, while recognizing the limitations a plaintiff may have in setting out each detail of the claim before discovery. *In re Enron Corp.*, No. 01-16034 AJG, 2006 WL 2400369, at *4 (Bankr. S.D.N.Y. May 11, 2006). In a subsequent transfer claim, this means only that a defendant must be adequately apprised of the subsequent transfers that the Trustee seeks to recover. *Picard v. Cohmad* (*In re BLMIS*), 454 B.R. 317, 340 (Bankr. S.D.N.Y. 2011) ("*Cohmad II*"). In the Complaint, the Trustee provides the Defendant with the "who, when, and how much" of the purported transfers. *Cohmad II*, 454 B.R. at 340; (Am. Compl. ¶¶ 270–76).

> Based on the Trustee's investigation to date, M&B (including M&B SGIIC, which merged into M&B) received at least $9,803,268 in subsequent transfers from LIF-USEP:
>
> a. M&B received at least $6,024,082 in trailing and distribution fees from UBS SA and UBSTPM, consisting of management fees UBS SA and UBSTPM received from LIF-USEP in connection with M&B's role as LIF-USEP's distributor from September 2005 to December 2008.

      b. Between 2006 and 2007, LIF-USEP transferred at least $2,878,597 to M&B in connection with M&B's proprietary investments.

      c. Between 2006 and 2007, LIF-USEP transferred at least $900,590 to M&B SGIIC in connection with M&B SGIIC's proprietary investments.

(*Id.* ¶ 272).

The Trustee has alleged that the LIF-USEP sole business was investing with BLMIS. (*Id.* ¶ 18) ("LIF-USEP's sole purpose was to direct investments into BLMIS in New York. Thus, the ultimate source of profit and/or revenue, for all of the Defendants in this action . . . ."). The feeder fund received hundreds of millions of dollars in initial transfers of customer property from BLMIS. (*Id.* ¶ 266) ("BLMIS made transfers to or for the benefit of LIF-USEP in the amount of at least $498,300,000. . . ."). Any and all subsequent transfers made from the feeder fund to Defendant are very likely comprised of BLMIS customer property.

As has previously been stated by this Court,

> the Trustee is an outsider to these transactions and will need discovery to identify the specific subsequent transfers by date, amount and the manner in which they were effected. The Moving Defendants are a group of interrelated individuals and entities .... Whether they additionally received Subsequent Transfers of BLMIS funds from one another is a question to which they, and they alone, have the requisite information to respond.

*Picard v. Mayer (In re BLMIS)*, No. 08-01789, Adv. No. 20-01316, 2021 WL 4994435, at *5 (Bankr. S.D.N.Y. Oct. 27, 2021).

The Defendant argues that the Complaint fails to adequately allege that the transfers were comprised of BLMIS customer property, as it "alleges that Subsequent Transfers the trustee seeks to recover were made to M&B in 2005 and 2006, that is, before the first Initial Transfer from BLMIS to LIF-USEP." (Mem. L. 15, ECF No. 292). However, the Court finds that the Trustee has plausibly alleged M&B received BLMIS customer property. The Complaint plausibly alleges that LIF-USEP's sole business was investing with BLMIS, and that the fund

received hundreds of millions of dollars in initial transfers of customer property from BLMIS. (Am. Compl. ¶¶ 2, 266). The "ultimate source of profit and/or revenue, for all of the Defendants in this action, was business activity expected to be undertaken exclusively in New York." (*Id.* ¶ 18).

The Complaint plausibly alleges that all transfers from the feeder fund to Defendant were of BLMIS customer property. Nothing more is required at this early stage of the proceeding. *See Picard v. UBS AG (in re BLMIS),* Adv. Pro. No. 10-04285 (CGM), 2022 WL 17968924, at *16–17 (Bankr. S.D.N.Y. Dec. 27, 2022). The calculation of LIF-USEP's customer property and what monies were used to make redemption payments are issues of fact better resolved at a later stage of litigation.

## Conclusion

For the foregoing reasons, Defendant's motion to dismiss is denied. The Trustee shall submit a proposed order within fourteen days of the issuance of this decision, directly to chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local Bankruptcy Rule 9074-1(a).



Dated: October 10, 2023
Poughkeepsie, New York

/s/ Cecelia G. Morris
_____
Hon. Cecelia G. Morris
U.S. Bankruptcy Judge